ATTACHMENT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

U.S. DISTRICT COURT
EASTERN DISTRICT-WI
FILED

2018 JUL -9  A 9 52

STEPHEN C. DRIES
CLERK

Rebecca I. Harp
4924 N. 107th Street
Milwaukee, WI  53225

        Plaintiff

    vs

Allison Glock, Journalist
ESPN Magazine, LLC ESPN Plaza
Bristol, Connecticut 06010

        Defendant

Case Number:

**18-C-1039**

---

### COMPLAINT FORM
### (for non-prisoner filers without lawyers)

---

### PARTIES

1. Plaintiff Rebecca I. Harp ("Harp" or "Plaintiff") is a
   citizen of the United States, is an adult resident of the
   City and County of Milwaukee, State of Wisconsin, and was
   at all times relevant residing in Milwaukee, Wisconsin.

2. Upon information and belief, Defendant Allison Glock,
   ("Glock" or "Defendant") is a citizen of the United States,
   is an adult who work for ESPN The Magazine is a corporation
   having a principal place of business located at ESPN Plaza,
   Bristol Connecticut, 06010.

## THE NATURE OF THE ACTION

3.   This is an action for pecuniary recovery and equity's

premier remedy of the documentary Unraveled Never Say

Goodbye When 14 -year-old Malika Willoughby meets fellow

high school basketball champ Roz Ross, the two forge an

instant connection. But when their intense friendship

blossoms into a forbidden romance, their lives are forever

changed; that aired September 1, 2016.

4.   Unraveled Never Say Goodbye being sold by Glock on Amazon

Video from $2.99.

## Compliant For Damages

5.   1.  Defamation (Slander)

2.  Intentional infliction of emotional Distress

3.  Negligent infliction of emotional distress

4.  Fraudulent misrepresentation (Deceit)

5.  Unjust Enrichment

6.   Defendant, Allison Glock consciously and deliberately aired

a documentary based on fraudulent events and facts related

to the consequence of the way Malika Willoughby was reared

as a child by her Mother, Rebecca I. Harp that caused a

unhealthy relationship with Rosalind Ross in the

documentary Unraveled titled "Never Say Goodbye" that aired Thursday, September 1 at 9/8p.m. Central on Investigation Discovery.

7. This is an action for defamation (slander), intentional infliction of emotional distress, negligent infliction of emotional distress, and fraudulent misrepresentation (deceit).

**ALLEGATION COMMON TO ALL COUNTS**

8. The documentary was narrated by Glock and showed that Ms. Willoughby was born into "Dickensian" (reference in Glock article) circumstances showing that the family was living in the rough neighborhood of Harambee a few miles from the Ross/Collins family.

9. The documentary showed that Ms. Willoughby was reflexively serious, controlled by Harp.

10. The documentary shown Harp, a bus driver, was erratic, and had no time for Ms. Willoughby.

11. It was stated that Ms. Willoughby was frequently left to raise her younger sisters, one of whom was severely disabled with cerebral palsy.

12. It was stated that Ms. Willoughby cooked, cleaned, changed feeding tubes and diapers, socializing little, except with the Ross family as through this was the circumstances at the time of the criminality.

13. Ms. Willoughby consoled herself by hanging out with Spencer in the rough Harambee neighborhood.

14. When Ms. Willoughby tried to talk to Harp she only had time for her disabled daughter and then called Ms. Willoughby to help her as though this was the circumstances going on just before the criminality.

15. The documentary stated and showed that the family lived in the rough neighborhood of Harambee that is infested with dilapidated, boarded-up homes as though Ms. Willoughby was living in this area in the present day and right before the criminality happened.

16. After the documentary aired the Family (Brother, Spencer Ross, Mother, Pamela Collins, Brother, Ken Collins, Father Willie Collins) admitted the facts and events are lies on Facebook on September 16, 2016.

17.

**Spencer Ross**
I give yall permission to go there... Super disrespectful and unethical.. Even if those lies were true nobody has the authority to take a life. I mean you got out the car on your own free will. No danger. Smh horrible choice made point and blank

18. The documentary showed Ms. Willoughby living at home and only played basketball with Spencer because the Harp family did not live far from the Ross family.

19. The documentary is one sided and Defendant engaged in a malicious and egregious pattern of deceptive conduct in order to portray Harp in a negative, false light while also giving off the false impression that the Ross/Collins family held the moral high ground in the documentary.

20. The documentary showed Ms. Willoughby having dinner with the Ross/Collins family while living at home with her mother Harp.

21. As a result of the way Harp raise Ms. Willoughby, living in a poverty stricken tough neighborhood that was characterized by violence or crime contributed to Ms. Willoughby's state of mind that resulted in Ms. Willoughby being very much attached to the Ross/Collins family that

resulted in Ms. Willoughby accidentally shooting Ms. Ross that resulted in her death.

22. The documentary shows Ms. Willoughby living at home at the time of the criminality.

23. Glock is advertising the movie for sale from $2.99 on Amazon Video with a portrait of herself, full cast and crew, trivia, user reviews, IMDbPro and more profiting off of my emotional distress and her intentional infliction of emotional distress upon my person and her negligent infliction of emotional distress upon my person which is unjust.

24. Glock knew that the above statements about Ms. Willoughby were false, derogatory, disparaging, malicious, and materially inaccurate. Glock broadcasted these enactments and statements maliciously and with the intent to cause harm to Harp.

25. Plaintiff was never contacted by Glock to participant in the documentary by letter, email, or telephone.

**FACTS**
**COMMON TO COUNT I FOR DEFAMATION (SLANDER), COUNT II INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS III NEGLIGENT INFLECTION OF EMOTIONAL DISTRESS IV FRAUDULENT MISREPRESENTATION (DECEIT) V UNJUST ENRICHMENT**

26.  Harp hired Attorney Michael Hart as counsel for Ms.
     Willoughby. Attorney Hart's Sentencing Memorandum talked
     about Ms. Willoughby being caregiver to her family.

27.  Attorney Hart did not disclosed in the Sentencing
     Memorandum that Ms. Willoughby's disabled sister was placed
     in the foster care system in 1999 due to Harp being
     diagnosed with intervertebral disk disease in 1998.

28.  There was a home health aide in the home five days a week
     from 8:00 to 5:00 p.m. when her disable sister was in the
     home before she was placed in the foster care system.

29.  Ms. Willoughby played for the Playmakers and gain publicity
     with her picture/portrait featured in the Milwaukee Journal
     Sentinel (WI) (Published as Milwaukee Journal Sentinel) -
     October 15, 1998. Seher Playmakers win games, attention
     from college scouts.

30.  Ms. Willoughby played at the Seher Boys and Girls Club,
     2401 W. Rogers Street located on the South Side of
     Milwaukee that attracted that kind of attention. Harp moved
     to Wisconsin May 1, 1992 and lived on the south side of
     Milwaukee where the club was located.

31.  The documentary did not mention that Ms. Willoughby was in
     an Intimate Partner Violence Relationship. Ms. Willoughby

suffered physical assault by Ms. Ross that resulted in a broken tailbone at Saint Joseph Hospital's ER that is documented that was not even mentioned in the documentary.

32. Ms. Willoughby suffered a busted ear drummed that is documented that Harp found out about through Ms. Willoughby's Attorney Michael Hart that was not even mentioned in the documentary.

33. Glock didn't ask Ms. Rubis (a very good friend of Ms. Willoughby) to participant in the documentary who stated to Glock that she has never seen a basketball player suffer from a busted eardrum. Glock interviewed Ms. Rubis for Glock's article in ESPN magazine (At the corner of love and basketball) and made the above statement that Glock included in the article.

34. The documentary did not mention that Ms. Willoughby was belittled, threatened, humiliated, lied to, controlled and slapped around by Ms. Ross.

35. Glock did not seek out the friends and family who said they had seen Ms. Willoughby with black eyes and bruises that gave testimony to this fact that's in the record.

36. The video of the occurrence in real time shows Ms.
    Willoughby and Ms. Ross fighting in the car that was not
    shown in the documentary.

37. The video of the occurrence in real time shows Ms.
    Willoughby shot Ms. Ross accidently that's in the record
    and proved at the sentencing hearing was not shown in the
    documentary.

38. The video of the occurrence in real time shows Ms.
    Willoughby pulling Ms. Ross out of the vehicle; falling
    down on her knees exhibiting Ms. Willoughby trying to help
    Ms. Ross that was not shown in the documentary.

39. The video of the occurrence in real time shows Ms.
    Willoughby exhibiting Ms. Willoughby was asking for help
    that was not shown in the documentary.

40. The documentary did not include any of the above
    occurrences in real time.

41. The documentary only showed the car at the Popeye's
    restaurant in real time.

42. The documentary did not explain the intricacies of same-sex
    domestic violence, how it is often overlooked, especially
    among women, whom society views as equals.

43. The Defendant chose to allow the Ross/Collins family to participant in the documentary and not Harp.

44. Glock chose a mental health expert to participant in the documentary that has never interviewed Ms. Willoughby instead of Liz Marquardt of the Sojourner Family Peace Center, who actually interviewed Ms. Willoughby and gave testimony that was entered in Attorney Hart's Sentencing Memorandum.

45. Glock fails to tell the viewing audience that Harp went and spoke to Ms. Ross's mother regarding her 18-year-old daughter trying to pursue a relationship with her 14-year-old daughter that was entered in the Sentencing Memorandum.

46. The documentary was false, derogatory, disparaging, malicious, and materially inaccurate and shown to a national audience over and over again to this present date.

47. Plaintiff is informed and believes, and based on such information and belief alleges that Defendant's false, derogatory, disparaging, malicious, and materially inaccurate account was in the documentary and in writing.

48. Glock used her fame as a means of establishing credibility for her false, derogatory, disparaging, malicious, and

materially inaccurate account in the documentary regarding
Harp's family life as it relates to Ms. Willoughby, the
environment Ms. Willoughby lived in, and how she was
raised, where she lived and the things Harp allowed Ms.
Willoughby to do as adolescent.

49. Defendant's actions and defamatory documentary was
outrageous, negligent, reckless, intentional, and
maliciously broadcasted to a national audience.

50. Ms. Willoughby's action on September 15, 2010 had nothing
to do with the way she was raised by Harp; Harp's family
life as it relates to Ms. Willoughby, the environment Ms.
Willoughby lived in, where she lived and the things Harp
allowed Ms. Willoughby to do as a adolescence but
everything to do with the volatile relationship she was in
with Ms. Ross. Which is substantiated by medical documents
and I witness accounts.

51. The documentary had everything to do with the Ross's family
outrage or unsubstantiated claims made by some of Rosalind
Ross' friends and Spencer L. Ross.

52. Plaintiff became fully award of the misrepresentation by
Defendant on September 1, 2016.

53. Defendant caused Harp financial distress as Harp sought
professional help after watching the documentary that
resulted in co-pays.

54. Harp sought professional help after contacting
    Investigation on Discovery channel (NBCUniversal) that fell
    on death ears after hearing that Glock would be doing a
    documentary featuring the Ross family in January of 2016
    that generated co-pays.

55. As a direct and proximate result of Defendant's actions,
    Plaintiff has suffered injury to her reputation; severe
    emotional distress, alienation, extreme aggravation, pain
    and suffering, mental anguish, humiliation, embarrassment
    and inconvenience.

56. The aforementioned distresses caused Harp to attempt to
    commit suicide twice.

**ALLEGATIONS COMMON TO COUNT IV FOR FRAUDULENT
MISREPRESENTATION (DECEIT)**

57. The representations' of Harp in the documentary are false
    and known to be false, or were made with a reckless
    disregard for its truth or untruth at the time said
    representations were made in the documentary Unraveled
    Never Say Goodbye.

58. The foregoing representation has been fabricated for the
    purpose of bring to life Defendant's story that appeared in
    the June 11 Women in Sports issue of ESPN The Magazine "At
    the corner of love and basketball".

59. The Defendant knows where the Plaintiff's residence is. In the story "At the corner of love and basketball" contains direct quotations from the letter Ms. Willoughby wrote to Harp that Harp sent to the Judge presiding over the case.

60. The letter from Ms. Willoughby to Harp contained a cover letter that indicated where Plaintiff residence is located.

61. The Discovery between both Attorneys that substantiated through documentation, testimonies, and outline in Attorney's Hart Sentencing Memorandum that Ms. Willoughby was in an Intimate Partner Violence relationship.

62. Defendant use excerpts from the record in her story "At the corner of love and basketball" that appeared in the June 11 Women in Sports issue of ESPN The Magazine that was not used in the documentary.

63. Plaintiff was ignorant of the falsity of the representations in the documentary.

64. The Ross/Collins family and friends initially claimed that Ms. Willoughby shot Ms. Ross because she was angry and jealous that Ms. Ross accepted a job offer as a basketball recruiter at her Alma Mater Oklahoma and was planning to take another woman. That was not mentioned in the documentary.

65. The documentary focused on Ms. Willoughby being 14-years-old living, being raised by Harp and alluded to the

challenges of being raised in the home of Harp contributed
to Ms. Willoughby state of mind that caused the
criminality. Ms. Willoughby was actually 27-years-old, a
graduate of Kent State University on a full scholarship
that required that she live on campus and in the state of
Ohio.

66. Ms. Willoughby was living in the home of her childhood
located at 5153 N. 106th Street at the time of the
criminality that was purchased on February 26, 1999. The
address is noted on several different documents in the
records. Ms. Willoughby was also working as a branch
manager at a bank.

67. The aforementioned location was not included in the
documentary that is supposed to be based on the truth and
what actually happened that resulted in the crime, during
the course of the investigation, at all of the court
hearing, and at the sentencing hearing. These important
facts were not included in the documentary.

68. The Defendant came to Milwaukee, Wisconsin to get the
information for the documentary and for her article in ESPN
The Magazine. Glock knew the truth and the circumstances'
surrounding the facts and how it all happened and chose not
to tell the truth but chose to slander Harp and make it

appear that Ms. Willoughby was 14-years-old living at home with Harp.

## COUNT 1 – DEFAMATION (SLANDER)

69. Plaintiff re-alleges each and every allegation contained in Paragraphs 1 through 68 as though set forth in full herein.

70. As set forth above, Defendant falsely and maliciously defamed Harp.

71. Glock purposely made false statements with the intention of negatively impacting Harp's reputation with Harp's friends and acquaintances.

72. Glock purposely sought to broadcast her false statements to a nationwide audience in oral form thereby slandering Harp.

73. The slanderous communication was expressly applied to Harp by name as the communications related solely to her and the ascription of conduct to her.

74. Any recipient of the slanderous broadcast would reasonably comprehend the nature and import of the allegations and that said allegations related expressly to Harp.

75. As a direct and proximate result of Glock's false and slanderous utterances, Harp has suffered injury to her reputation, severe emotional distress, alienation, extreme aggravation, pain and suffering, mental anguish, humiliation, embarrassment, inconvenience and the measure of the amount is the value to the plaintiff of the right

which she in good faith asserts in her pleading that sets forth the operative facts which constitute her cause of action.

76. As a direct and proximate result of Glock's false and slanderous utterances, Harp has suffered injury to her reputation, severe emotional distress, alienation, extreme aggravation, pain and suffering, mental anguish, humiliation, embarrassment, inconvenience and the measure of the amount is the value to the plaintiff of the right which she in good faith asserts in her pleading that sets forth the operative facts which constitute her cause of action.

77. Because the actions by Glock were carried out willfully, wantonly, and maliciously, Harp is entitled to punitive damages in an amount which will deter Glock and others from engaging in the type of egregious conduct alleged herein.

## COUNT II INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

78. Plaintiff re-alleges each and every allegation contained in Paragraphs 1 through 77 as though set forth in full herein and, to the extent necessary, pleads this cause of action in the alternative.

79. Glock's conduct and defamatory documentary was extreme and outrageous.

80. Glock's conduct and defamatory documentary have caused Harp to suffer severe emotional distress.

81. Glock knew and intended that Harp would suffer severe emotional distress as a result of her conduct and defamatory documentary. Glock held the power and was the one in control of the documentary she narrated it.

82. As a direct and proximate result of Glock's conduct and defamatory documentary, Plaintiff has suffered injury to her reputation, severe emotional distress, alienation, extreme aggravation, pain and suffering, mental anguish, humiliation, embarrassment, inconvenience, expenses and the measure of the amount is the value to the plaintiff of the right which she in good faith asserts in her pleading that sets forth the operative facts which constitute her cause of action.

83. Because the actions by Glock were carried out willfully, wantonly, and maliciously, Harp is entitled to punitive damages in an amount which will deter Glock and others from engaging in the type of egregious conduct alleged herein.

### COUNT IV FRAUDULENT MISREPRESENTATION (DECEIT)

84. Plaintiff re-alleges each and every allegation contained in Paragraphs 1 through 83 as though set forth in full herein and, to the extent necessary, pleads this cause of action in the alternative.

85. Glock misrepresented certain material facts as alleged herein willfully to deceive.

86. Some or all of these misrepresentations were made with knowledge of their falsehood and/or with the intent to deceive the viewing audience.

87. Glock reasonable relied on and acted to her detriment on these representations in the documentary.

88. As a direct and proximate result of Glock's conduct and defamatory documentary, Harp has suffered injury to her reputation, severe emotional distress, alienation, extreme aggravation, pain and suffering, mental anguish, humiliation, embarrassment, inconvenience, expense, and the measure of the amount is the value to the plaintiff of the right which she in good faith asserts in her pleading that sets forth the operative facts which constitute her cause of action.

89. Because the actions by Glock were carried out willfully, wantonly, and maliciously, Harp is entitled to punitive damages in an amount which will deter Glock and others from engaging in the type of egregious conduct alleged herein.

## COUNT V UNJUST ENRICHMENT

90. Plaintiff re-alleges each and every allegation contained in Paragraphs 1 through 89 as though set forth in full herein

and, to the extent necessary, pleads this cause of action in the alternative.

91. Harp alleged and believes that Glock is profiting from injury to her reputation, severe emotional distress, alienation, extreme aggravation, pain and suffering, mental anguish, humiliation, embarrassment, by asking cash payment from $1.99 to watch the documentary on Amazon video.

92. As a direct and proximate result of Glock's conduct and defamatory documentary, Harp has suffered injury to her reputation, severe emotional distress, alienation, extreme aggravation, pain and suffering, mental anguish, humiliation, embarrassment, inconvenience, expense, and the measure of the amount is the value to the plaintiff of the right which she in good faith asserts in her pleading that sets forth the operative facts which constitute her cause of action.

93. Because the actions by Glock were carried out willfully, wantonly, and maliciously, Harp is entitled to punitive damages in an amount which will deter Glock and others from engaging in the type of egregious conduct alleged herein.

## JURISDICTION

94. I am suing under state law. The state citizenship of the plaintiff is (are) different from the state citizenship of the defendant, and the amount of money at stake in this

case (not counting interest and costs) is $10,000,000.00 in

suffered injury to her reputation, severe emotional

distress, alienation, extreme aggravation, pain and

suffering, mental anguish, humiliation, embarrassment,

inconvenience, and to the treatment of Harp mental

disorders.

## **PRAYER FOR RELIEF**

Accordingly, Plaintiff Rebecca I. Harp prays for judgment in its

favor and against Defendant as follows:

1.  As to the First Cause of Action: An award of damages in an
    amount in excess of the Court's jurisdictional minimum and
    punitive damages in an amount which will deter the
    Defendant and others from engaging in the type of egregious
    conduct alleged herein.

2.  As to the Second Cause of Action: An award of damages in an
    amount which will deter the Defendant and others from
    engaging in the type of egregious conduct alleged herein.

3.  As to the Third Cause of Action: An award of damages in an
    amount in excess of the Court's jurisdictional minimum and
    punitive damages in an amount which will deter the
    Defendant and others from engaging in the type of egregious
    conduct alleged herein.

4.  As to the Fourth Cause of Action: An award of damages in an
    amount in excess of the Court's jurisdictional minimum.

5. As to the Fifth Cause of Action:

   a. Permanent Injunction relief restraining Glock from selling the documentary on Amazon Video and

   b. An award of damages in an amount in excess of the Court's jurisdictional minimum and punitive damages in an amount which will deter the Defendant and others from engaging in the type of egregious conduct alleged herein.

6. As to All Causes of Action:

   a. An award of costs and interest to the extent, if any allowed by law; and

   b. For such other and further relief as his Court deems just and proper.

## JURY DEMAND

Plaintiff Rebecca I. Harp demands a Court Trail – I want a Judge to hear my case.

Dated this 9 day of July 2018

NOTARY

Respectfully Submitted,

Rebecca I. Harp

By

Rebecca I. Harp
4924 N. 107th Street
Milwaukee, WI   53225
(414)760-7983
r-harp@sbcglobal.net

State of Wisconsin County of Milwaukee
Subscribed and sworn before me on 7-9-18 (Date)
(Notary Signature)

LUPUITA SIMMONS
NOTARY
PUBLIC
STATE OF WISCONSIN